W. T. GRANT COMPANY *v.* UNITED STATES (No. 4635)[1]

[1] C. A. D. 440.

58

United States Court of Customs and Patent Appeals, October 31, 1950

*Sharretts & Hillis* (*Oscar E. Bland* and *Howard C. Carter* of counsel) for appellant. *David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument October 3, 1950, by Mr. Bland, Mr. Carter, and Mr. Weeks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

The W. T. Grant Company of New York City imported at the port of New York in 1935 thirteen cases of "cotton fabric and rayon gloves" which had been shipped to it by the W. T. Grant Company of Berlin, Germany. The consular invoice was executed before the United States Consul in Berlin on February 28, 1935, by the W. T. Grant Company, Berlin, as "Seller." Attached to the consular

invoice were invoices of four German manufacturers covering the portion of the thirteen case importation of gloves supplied by each manufacturer.[2] One of those invoices covered three cases of gloves sold to the W. T. Grant Company by the German manufacturer Alban Vogel, Burgstaedt, Saxony. Those cases were numbered 5762, 5763, and 5764. The entire shipment of thirteen cases was shipped on a single bill of lading and was entered for consumption in New York on March 8, 1935, in a single entry by the W. T. Grant Company of New York.

The importer protested the collector's assessment of duty on the contents of cases 5762 and 5763 (Manufacturer's Call No. 39322; Manufacturing No. 7424¾) at 60% ad valorem under paragraph 915[3] of the Tariff Act of 1930, 19 U. S. C. 1001, par. 915, as gloves made of fabric knit on a warp-knitting machine, alleging that the merchandise in those cases was properly dutiable at 25% ad valorem under the provisions of that paragraph as gloves made of woven fabric. An additional duty of 10¢ per pound, assessed under paragraph 924 of the tariff act, 19 U. S. C. 1001, par. 924, was not protested.

The collector reviewed and adhered to his classification in August 1937, and the protest was subsequently tried before the United States Customs Court, Second Division, in March 1949. At the trial, counsel for the importer repeated the averments of the protest and offered in evidence "the invoice, entry, and all official papers connected therewith." Government counsel objected to the admission of "any statements contained on the invoice or other papers with respect to this merchandise." The trial court received the invoice into evidence with the explanation that Government counsel did not want to be bound by such admission, as to "the statements contained in the invoice." No other evidence was introduced by counsel for either side.

The German manufacturer's invoice covering the contents of cases 5762 and 5763 was attached, as explained above, to the consular invoice. At the foot of the manufacturer's invoice appears the following statement:

> WOVEN PART of these Article [sic] CHIEF VALUE, as per separate statement.
>
> ALBAN VOGEL
> by Karl Snow [Signature].

Attached to the manufacturer's invoice is a typewritten statement captioned: "Styles No. 7547½ & 7424¾ are constructed as follows:"

---

[2] Sec. 481 (c) of the Tariff Act of 1930, 19 U. S. C. 1481 (c) provides for such attachment to the consular invoice when merchandise purchased in different consular districts is assembled for shipment and embraced in a single consular invoice.

[3] Par. 915. Gloves and mittens, finished or unfinished, wholly or in chief value of cotton or other vegetable fiber: Made of fabric knit on a warp-knitting machine, 60 per centum ad valorem; made of fabric knit on other than a warp-knitting machine, 50 per centum ad valorem; made of woven fabric, 25 per centum ad valorem.

·(Style 7424¾ identifies the merchandise which is the subject matter of this litigation). Following the caption is a detailed breakdown or cost analysis purporting to represent the value of the material in the respective knit and woven portions of the gloves as well as the respective labor costs of incorporating the knit and woven portions into the finished gloves. At the foot of the typewritten sheet is the following:

ALBAN VOGEL
by Karl Snow [Signature].

The figures set forth in the cost analysis attached to the manufacturer's invoice indicate that 55% of the value of the gloves is represented by the value of the woven material.

In his brief submitted to the trial court, counsel for the importer contended that the appraiser failed to examine the contents of cases 5762 and 5763, and therefore that the presumption of correctness arising from the official action of the collector in classifying the merchandise in those cases was weakened or destroyed.[4] Counsel then contended that the statements contained on the invoice purporting to establish the woven material as the component of chief value in the gloves were sufficient to establish a *prima facie* case for the importer.

It is well understood, of course, that the importer in a classification case has the burden not only of proving that the collector's classification is wrong, but also that the classification for which the importer contends is correct. *Joseph E. Seagram & Sons, Inc.* v. *United States,* 30 C. C. P. A. (Customs) 150, C. A. D. 227; *United States* v. *Enrique C. Lineiro,* 37 C. C. P. A. (Customs) 5, C. A. D. 410. The statements on and attached to the manufacturer's·invoice relating to the woven material as the component of chief value, if they have probative value at all, would be of value as bearing on the second element of the importer's burden of proof—that the classification for which he contends is correct. As to those statements, the trial court noted the objections made by Government counsel and held that the situation before it was "very similar" to and "in substance" the situation which obtained in *United States* v. *National Aniline and Chemical Company,* 3 Ct. Cust. Appls. 10, T. D. 32287, where this court rejected a statement by a foreign manufacturer attached to the consular invoice and held that such an unsworn *ex parte* statement could not be accorded the probative value of a deposition under oath with full opportunity for cross examination of the witness which the other party would be entitled to receive. The trial court's analysis of the instant case as

---

[4] Sec. 499 of the Tariff Act of 1930, 19 U. S. C. 1499, requires the collector to "designate the packages or quantities covered by any invoice or entry" to be examined, requiring that "Not less than one package of every invoice and not less than one package of every ten packages of merchandise" shall be so designated. The thirteen packages comprising the instant importation were covered by one consular invoice and were entered for consumption in a single entry. The collector "designated" two cases of the thirteen for examination.

similar to and in substance the same as the *National Aniline* case as respects the foreign manufacturer's *ex parte* statements is a definite holding by the trial court that the evidence upon which the importer here relies is hearsay evidence and entitled to no probative value.

The importer has appealed from the trial court's judgment affirming the collector's classification, and in his assignment of errors alleges that the Customs Court erred in holding that the invoice did not have "sufficient evidentiary value to be determinative" of the case, and in holding that "the evidential value of the invoice" itself did not overcome the presumption of correctness of the collector's classification.

The importer has filed two briefs before us on this appeal. In the first brief, the importer contends that the invoice is evidence and that it overcomes the presumption of correctness attaching to the collector's classification regardless of whether or not there is independent evidence overcoming such presumption. In a second brief, styled "Appellant's Brief in Reply to Brief of Appellee" counsel for the importer advances as authoritative the proposition that "there is no presumptive correctness to an invalid appraisement or an invalid assessment of duty and that in the absence of any other evidence, the invoice affords proof of such value so as to determine the classification and the facts upon which it is based." The brief elsewhere contains the statement that "The customs officials did not examine at least one of the two cases in order to determine their dutiable status * * *" from which the conclusion is advanced that "no presumption of correctness attached to official action."

It will thus be seen that the important issue on this appeal is the nature of the consular invoice as evidence, and the relationship of the statements on the manufacturer's invoice to it. For if the statements on the manufacturer's invoice attached to the consular invoice purporting to show that the gloves were in chief value of woven material are inadmissible in evidence in this case, they are, in view of the Government's timely objections, inadmissible to overcome the presumption of correctness of the collector's classification[5] *or* to establish the correctness of the classification claimed by the importer.

The Customs Court is a court of justice, and the same rules of evidence apply there as in courts of general jurisdiction.[6] Upon objection, hearsay evidence is inadmissible as evidence in the Customs Court, and this court has been consistent in so holding. *Acker v. United States*, 1 Ct. Cust. Appls. 404, T. D. 31481; *United States v. Freese* Co., 4 Ct. Cust. Appls. 271, T. D. 33488; *Borgfeldt & Co. v. United States*, 11 Ct. Cust. Appls. 421, T. D. 39433; *Eidlitz & Son, Inc. v. United States*, 12 Ct. Cust. Appls. 56, T. D. 39998; *United*

[5] We here state the importer's contention; we do not imply that such invoice statements are ever competent to overcome the presumption of correctness attaching to official action.

[6] Stein, *The United States Customs Court* (1950) 12, 13, 16.

*States* v. *C. J. Holt & Co.*, 17 C. C. P. A. (Customs) 385, T. D. 43822; *J. Benitez Cintes* v. *United States*, 18 C. C. P. A. (Customs) 361, T. D. 44614. It should be unnecessary to state that *ex parte* statements made without that full opportunity for cross-examination which ages of experience have established as an essential safeguard to truth are generally inadmissible in a court of justice. *United States* v. *Freese Co.*, *supra*. Whether such *ex parte* statements are sworn or unsworn is of no consequence.[7]

The shipper or seller who executes the consular invoice pursuant to 19 U. S. C. 1481, 1482, before the United States Consul abroad *may* be required by that officer to furnish proof of the facts recited therein, 19 U. S. C. 340.[8] Such a safeguard to truth enhances the value of such documents to the collector at the port of entry in his consideration of them in making appraisement or classification of the merchandise for duty, but the requirement by law that such invoices be prepared, 19 U. S. C. 1481, and certified, 19 U. S. C. 1482, and turned over to the collector when entry is made, 19 U. S. C. 1484 (b), does not affect the character of such documents when subsequently offered in evidence at trials before the Customs Court.[9] By statute, Congress has made admissible certain secondary evidence in reappraisement cases, 28 U. S. C. 2633 [derived from Sec. 501 of the Tariff Acts of 1922 and 1930; cf. 19 U. S. C. 1402 (b)], but that liberalizing provision has no applicability to classification cases.[10]

The invoice, of course, as part of the official file of papers in a protest case, always remains part of the official record in the case, 19 U. S. C. 1515, 19 CFR 17.3 (and so in reappraisement cases, 19 U. S. C. 1501 (a), 19 CFR 17.7; 19 U. S. C. 1402 (b); see 28 U. S. C. 2633), but when it is sought to introduce the invoice into evidence as tending to prove the truth of the matters recited therein, it must be offered to the court as evidence for that purpose. The normal rules of evidence then apply, and the opponent of the offeror is entitled to object to the admission of the invoice for such purpose if the circumstances attendant upon its offer characterize it as hearsay evidence which does not come within any of the common law or statutory

[7] See *Prosser* v. *United States*, 1 Ct. Cust. Appls. 29, T. D. 30850; *Strakosh* v. *United States*, 1 Ct. Cust. Appls. 360, T. D. 31453; *Acker* v. *United States*, 1 Ct. Cust Appls. 404, T. D. 31481; *United States* v. *National Aniline & Chemical Co.*, 3 Ct. Cust. Appls. 10, T. D. 32287; *United States* v. *Thomas*, 3 Ct. Cust. Appls. 142, T. D. 32385; *Borgfeldt & Co.* v. *United States*, 11 Ct. Cust. Appls. 421, T. D. 39433; *Eidlitz & Son, Inc.* v. *United States*, 12 Ct. Cust. Appls. 56, T. D. 39998; *J. Benitez Cintes* v. *United States*, 18 C. C. P. A. (Customs) 361, T. D. 44614; 1 Jones on Evidence (4th Ed.) Sec. 299.

[8] Sec. 481 (c) of the Tariff Act of 1930, 19 U. S. C. 1481 (c), provides also that the consul *may* require one presenting a consular invoice to which are attached individual invoices covering portions of the assembled shipment purchased in different consular districts to have such invoices certified by the consular officer for the district in which the merchandise was purchased.

[9] See *United States* v. *Thomas*, 3 Ct. Cust. Appls. 142, T. D. 32385; *Hull* v. *United States*, 10 Ct. Cust. Appls. 211, T. D. 38556; *United States* v. *Ocean Brokerage Co.*, 11 Ct. Cust. Appls. 38, T. D. 38648; *Borgfeldt & Co.* v. *United States*, 11 Ct. Cust. Appls. 421, T. D. 39433; *United States* v. *C. J. Holt & Co.*, 17 C. C. P. A. (Customs) 385, T. D. 43822; *Thornley & Pitt et al.* v. *United States*, 19 C. C. P. A. (Customs) 221, T. D. 45325.

[10] See e. g., *United States* v. *Sabin*, 12 Ct. Cust. Appls. 520, T. D. 40731; *Union Food Products* v. *United States*, 13 Ct. Cust. Appls. 343, T. D. 41253; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, C. A. D. 227 (semble).

exceptions to the hearsay rule. *Borgfeldt & Co. v. United States, supra.*[11]

Admissions by a party, of course, may be introduced into evidence against him by his party opponent. 4 Wigmore on Evidence (3d Ed.) Sec. 1048; 1 Jones on Evidence (4th Ed.) section 236. Declarations in invoices and entry papers *made by the importer* may be admitted into evidence against him as admissions against his interest.[12] It should be carefully noted, however, that statements appearing in an invoice not prepared or made by the importer ought not be admitted into evidence against him as admissions[13] unless there is sufficient privity between a foreign seller, shipper, or manufacturer and the importer as to brirg the invoice prepared by the former under the admissions rule. Whether or not there is such privity we need not here decide. See 4 Wigmore on Evidence (3d Ed.) section 1080 *et seq.*, 1083; 1 Jones on Evidence (4th Ed.) section 239.

It follows with equal clarity that the *ex parte* declarations of an importer could not be received into evidence *at* his instance and in his behalf, for being hearsay, they would be but self-serving declarations, and therefore incompetent. So we have often held. *Eidlitz & Son, Inc. v. United States, supra; United States v. C. J. Holt & Co., supra;* see *Prosser v. United States,* 1 Ct. Cust. Appls. 29, T. D. 30850.

When hearsay is *offered* as evidence, the onus is on the offering party's opponent to object to its admission, and if he is silent, the incompetent evidence goes in, and may be considered by the trial court in the exercise of its sound discretion. *United States v. Toledo Museum of Art,* 25 C. C. P. A. (Customs) 373, T. D. 49455. This must be borne in mind in considering statements appearing in decisions of this court regarding the evidentiary value of invoices where the invoices were received in or considered as evidence in classification proceedings because of the Government's failure to object; see, e. g., *United States v. International Clearance Co.,* 12 Ct. Cust. Appls. 430, T. D. 40592; *Lee & Co. v. United States,* 15 Ct. Cust. Appls. 202, T. D. 42236; *Joseph E. Seagram & Sons, Inc. v. United States,* 30 C. C. P. A. (Customs) 150, C. A. D. 227; *Oakland Food Products Co. et al. v. United States,* 32 C. C. P. A. (Customs) 28, C. A. D. 281; or where the parties stipulate to submit on the record; see *United States v. Metro-Goldwyn-Mayer Corp.,* 19 C. C. P. A. (Customs) 119,

[11] See *United States v. C. J. Holt & Co.,* 17 C. C. P. A. (Customs) 385, T. D. 43822; *J. Benitez Cintes v. United States,* 18 C. C. P. A. (Customs) 361, T. D. 44614; *United States v. Metro, Goldwyn Mayer Corp.,* 19 C. C. P. A. (Customs) 119, T. D. 45247; *Thornley & Pitt et al. v. United States,* 19 C. C. P. A. (Customs) 221, T. D. 45325.

[12] See *United States v. Rockhill & Vietor et al.,* 10 Ct. Cust. Appls. 112, T. D. 38374; *Lee & Co. v. United States,* 15 Ct. Cust. Appls. 202, T. D. 42236; *United States v. Paul Puttmann,* 21 C. C. P. A. (Customs) 135, T. D. 46466; *United States v. Wo Kee & Co.,* 21 C. C. P. A. (Customs) 341, T. D. 46880; *Wo Kee & Co. v. United States,* 21 C. C. P. A. (Customs) 366, T. D. 46890.

[13] Language inferring admissibility in *United States v. Gardel Industries,* 33 C. C. P. A. (Customs) 118, C. A. D. 325, was unnecessary to the decision in that case, and is *obiter.*

T. D. 45247; or where, its objections to the admission of the invoice as evidence of the matters described therein being overruled by the trial court, the Government fails to assign such ruling as error or abandons the point on appeal, *United States* v. *Albers Bros. Milling Co. et al.*, 35 C. C. P. A. (Customs) 119, C. A. D. 380.

An example is *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400, much relied upon by the importer, where the Government at the trial challenged the correctness of the invoice descriptions but did not object to the admission of the invoices as evidence; moreover, Government counsel questioned an examiner in the customs service closely as to the descriptive matter on the numerous invoices, thereby testimonially incorporating such matter into the trial record. Under such circumstances, the trial court was entitled in its discretion to give the invoice descriptions such weight as it felt they were entitled. The invoice descriptions being in evidence, this court held on appeal that there was some evidence in the record to support the trial court's decision. The *Bloomingdale* case did not present the issue of admissibility of invoices over timely objections under the hearsay rule, but rather was directed to a determination of what weight could be given invoice descriptions when they became a part of the trial record without objection. The *Bloomingdale* case is not inconsistent with the rule that descriptive matter on or incorporated into an invoice is hearsay evidence and may not be admitted into evidence over timely objections by the offeror's opponent.

In so saying, we would not be understood as foreclosing the possibility that invoices may be admitted into evidence under the Federal Shop Book Rule, 28 U. S. C. 1732, but even where that provision is invoked, proper ground work must be laid antecedent to the actual admission of the document into evidence as proof of the matters recited therein. In any event, the proffered document must come clearly within the terms of the statute, for it is no floodgate for the admission of hearsay evidence. See *Palmer* v. *Hoffman*, 318 U. S. 109; *New York Life Ins. Co.* v. *Taylor*, 79 U. S. App. D. C. 66, 147 F. (2d) 297 (CA D. C. 1945).

In the case at bar, the statement as to woven material being component of chief value was not made by the seller of the merchandise, the W. T. Grant Company of Berlin, but by some person in the name of the German manufacturer, Alban Vogel. The W. T. Grant Company of Berlin in certifying the consular invoice to which the manufacturer's invoice was attached was purporting to certify to the truth of what a person signing for the foreign manufacturer had stated. The statement by the latter person is now relied on by the importer here to establish the truth of the matters recited therein. Here then is one *ex parte* statement purporting to vouch for the

accuracy of a second *ex parte* statement, in matters apparently beyond the reasonable scope of personal knowledge of the W. T. Grant Company representative, and not demonstrably within the knowledge of the unknown person who signed for the German manufacturer, and neither of whom were subject to cross-examination. This is hearsay upon hearsay, and doubly objectionable. The court does not in so saying impugn the good faith of the W. T. Grant Company representative who executed the consular invoice, nor of the foreign manufacturer's representative, "but the trouble is that not infrequently the truth as they see it is not the whole truth, or it is seen at second hand, or if it is not distorted by prejudice it is colored by interest. Consequently fair protection of the rights of litigants demands that opposing witnesses shall be put to the proof not only as to their good faith, but as to the correctness and the sources of their knowledge." *United States* v. *Freese Co., supra,* at 273.

The Government's objection to the statements on the cited invoice was proper, and the trial court was correct in holding the character of the statement to be ruled by the *National Aniline* case, *supra,* as an *ex parte* declaration lacking probative value. Although the trial court considered at length the importer's other contentions, it is clear that such consideration was unnecessary to the disposition of the case.

There being no substantial evidence in the record to establish the correctness of the classification claimed by the importer, it is unnecessary to pass upon appellant's other contentions relating to alleged failure of the collector to comply with the law in so far as examination of the merchandise is concerned, for upon the record before us the importer has not carried the burden of proof as to the correctness of the classification he claims, even if it be assumed *arguendo* that the collector's classification is erroneous. Much was said at the oral argument concerning the difficulty in 1949 of taking depositions of witnesses in Saxony. That objection is immaterial as upon the face of the record the importer's cause of action matured in August 1937 when the collector reviewed and affirmed the protested classification.

The judgment appealed from is *affirmed.*

O'CONNELL, Judge, dissenting.

The invoice, the entry, and all of the official papers now before this court were received in evidence at the trial as part of the collector's file. No objection to their admission as such was offered by the Government, other than its refusal to be bound by any statements contained in the invoice or other papers with respect to the merchandise. No other evidence was submitted either by appellant or the Government.

The official papers show that the involved importation consisted of thirteen cases of cotton gloves imported from Germany on March 8, 1935, and that two of such cases, numbered 5616 and 5819, were designated by the collector for examination and were duly examined by the appraiser.

The official papers, as I view them, show further that the invoice, duly verified abroad before the Vice Counsel of the United States, covered the merchandise in issue which consisted of two of the thirteen imported cases, numbered 5762 and 5763, containing the only gloves of the character imported; that the merchandise in cases 5762 and 5763 were entered at 25 per centum ad valorem under paragraph 915 of the Tariff Act of 1930.

The official papers in evidence, in my opinion, also show that the collector designated no additional cases of the importation to be examined by the customs officials; that neither of the two cases in issue, as the court below pointed out in its decision, were actually examined by the customs officials; that nevertheless the collector advanced the value of the merchandise contained therein, as to the rate and amount of duty, over the entered value and assessed the goods in issue under the same paragraph of the tariff act at 60 per centum ad valorem; and that in so doing the collector apparently adopted the advisory classification of the appraiser contained in his notations on the face of the invoice, "warp knit," "60/10," and "P 915/924."

Appellant filed a protest against the action of the collector and in the instant suit has sought to recover the increased duties alleged to have been erroneously assessed as to rate and amount upon the two cases of gloves in issue.

Having advanced the value of the merchandise in the two cases in issue without having first made an examination and taken samples of the goods in at least one of such cases, the appraiser proceeded on the wrong principle, contrary to law, and his appraisement was illegal and void, even though he had before him one package in ten representing the remaining portions of the importation. *United States* v. *Beer*, 150 Fed. 566. The liquidation of the entry by the collector based on the illegal and void appraisement was likewise illegal and void. *United States* v. *William Heyer*, 31 C. C. P. A. (Customs) 111, C. A. D. 259.

The Circuit Court of Appeals for the Second Circuit held in the case hereinabove cited, which appears to be on all fours with the facts and issue in the instant case, that where customs officials proceeded upon a wrong principle, contrary to law, as the basis for the assessment of increased duties on imported merchandise, the importer pursued the proper remedy by filing a protest to recover the amount of the illegal and void assessment; and that the importer in such a case was not obliged to have recourse to a review of the action

of the customs officials by proceedings for reappraisement, citing *Robertson* v. *Frank Brothers Co.*, 132 U. S. 17.

However, the same principle of customs law with respect to un-examined merchandise also applies on appeal to reappraisement where the value has been illegally increased as the basis for the assessment of duties on imported merchandise. *McKesson & Robbins* v. *United States*, 11 Ct. Cust. Appls. 459, T. D. 39534; *United States* v. *V. W. Davis*, 20 C. C. P. A. (Customs) 305, T. D. 46087; *United States* v. *Japan Import Co., Inc.*, 28 C. C. P. A. (Customs) 71, C. A. D. 127.

There is a basic distinction under the statute between the protest filed by the importer with the collector against his decision as to the rate and amount of duty assessed by him on an illegal appraisement in the classification of merchandise, and the notice of dissatisfaction with the appraisement filed by the importer leading to an appeal from the appraisement. That distinction was succinctly and effec-tively pointed out by the Circuit Court of Appeals, Second Circuit, in the following excerpt from the decision rendered on December 7, 1925, under the provisions of the Tariff Act of 1913 in the case of *United States* v. *Lian et al.*, 10 F. 2d 41, 42:

Ever since the enactment and to the present time, an importer, in connection with his importations, could ask for reappraisement of his merchandise, if dis-satisfied with the valuations and assessments thereon. He could appeal from the appraisement. If dissatisfied with the decision of the collector as to the rate and amount, he could file a protest to that decision. The two are quite distinct. In other words, the decision of the appraisers as to the value of merchandise is the subject of an appeal to reappraisement, and the decision of the collector as to the rate and the amount of duties chargeable is the subject of protest. * * *

The provision for "gloves * * * made of woven fabric" included gloves described by the statements on the contested invoice made in chief value of woven fabric, which were properly dutiable at 25 per centum ad valorem under paragraph 915 of the Tariff Act of 1930, as claimed in appellant's protest, plus the additional duty of 10 cents per pound under paragraph 924. *May Co. et al.* v. *United States*. 25 C. C. P. A. (Customs) 227, T. D. 49336.

The appraisement in the instant case having been null and void with respect to the unexamined goods, the entered value thereof was the proper basis upon which to assess duty. *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, 157, C. A. D. 227. Therefore, appellant's protest should have been sustained, and the collector directed to reliquidate the entry, so far as it was based on the void appraisal, and to assess duty upon the entered value of the gloves contained in the two cases of goods here in issue. *United States* v. *Beer*, 142 Fed. 199, 201.

Section 484 of the Tariff Act of 1930 provides that the consignee of imported merchandise or his agent shall make an entry therefor

and that the entry shall be accompanied by invoices, bills of lading, and other documents specifying the kinds and quantities of all the merchandise imported and the value of the total quantity of each kind of article imported.

Section 500 of the same enactment provides that appraisers shall ascertain whether merchandise has been truly and correctly invoiced, and shall describe the merchandise so that the collector may determine the dutiable classification thereof. The Customs Regulations of 1931, Articles 269, 772, and 852, cover the administrative requirements of the respective statutes.

The invoice statements here in issue were properly admitted at the trial of the instant case since appellant, the importer, had the right to submit its case on the facts as they appear on the documents in the official file of the collector without reliance upon further evidence. *United States* v. *Davies, Turner & Co.*, 16 Ct. Cust. Appls. 50, 52, T. D. 42719.

In *Grecly* v. *Thompson et al.*, 10 How. 225, wherein the inspection and examination of the merchandise required by the statute had not been made, the Supreme Court held that the whole appraisement was invalid and accepted the invoice statement regarding the described goods on the ground that "it would be unreasonable to overturn the invoices and oaths of importers, unless by a personal inspection and examination" of the goods. This court has followed the same principle in the cases of *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400; *Joseph E. Seagram & Sons, Inc.* v. *United States, supra*.

The rule that statements on an entry and invoice produced from the collector's file are admissible in evidence as the basis for the assessment of duty on imported merchandise is so thoroughly imbedded in the customs law that customs officials from time to time have caused the compulsory insertion by an importer of additional charges upon the entry and invoice as a basis for increasing the rate and amount of valuation of merchandise for duty purposes. *Robertson* v. *Frank Brothers Co., supra; Jacksonville Paper Co.* v. *United States*, 30 C. C. P. A. (Customs) 159, C. A. D. 228. To recover the increased duties alleged to have been erroneously assessed on the imported merchandise, the respective importers in the cases hereinabove cited properly had recourse to the remedy by protest and not by appeal to reappraisement.

Furthermore, the description of an official invoice covering imported merchandise has evidentiary value and in a proper case may be considered as an admission of the importer against interest as here pointed out in the brief for the Government, citing *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, 122, C. A. D. 325.

The statements on the invoice do not of course finally conclude the

collector under all circumstances. Where there has been a proper inspection and examination of imported merchandise, and where the mandatory provisions of the statutes have been complied with, the importer may not rely wholly upon the facts stated on the invoice but must introduce additional independent evidence sufficient to overcome the presumption of correctness attaching to the collector's action *G. & H. Transport Co., Inc.* v. *United States*, 27 C. C. P. A. (Customs) 159, C. A. D. 78. See also *United States* v. *National Aniline and Chemical Company*, 3 Ct. Cust. Appls. 10, T. D. 32287; *United States* v. *Ocean Brokerage Co.*, 11 Ct. Cust. Appls. 38, T. D. 38648; *Oakland Food Products Co. et al.* v. *United States*, 32 C. C. P. A. (Customs) 28, C. A. D. 281; *United States* v. *Albers Bros. Milling Co. et al.*, 35 C. C. P. A. (Customs) 119, C. A. D. 380.

For the reasons stated, the judgment of the United States Customs Court should be reversed and the case remanded with instructions to sustain appellant's protest and reliquidate the entry as hereinbefore described.